Good morning, Your Honor. My name is David McColgan. I'm the attorney arguing on behalf of Appellant DeAndre Carter. This case involves the stop of a taxi in which Mr. Carter was investigating other criminal activity was warranted by reasonable suspicion. Just to be clear, we're not contesting the validity of the initial stop, and the government for its part is not contesting that in fact the stop was extended for the purposes of investigating other criminal activity. Indeed, the officer, Officer Murawski in this case, made clear that he was looking for drugs and drunks from the beginning and that he asked travel-related questions because he was looking for other criminal activity. Is it your position that it was improper to ask travel-related questions? It's improper under two conditions. One, if it extends the stop, and two, if there's no reasonable suspicion. And I believe that the officer made that clear in Rodriguez. Rodriguez sets out what are typical questions during a travel, a traffic-related stop. There was no reasonable suspicion in Rodriguez, so there wasn't that type of questioning in Rodriguez, correct? Actually, there was that type of questioning, and that's why Rodriguez is particularly significant. There was the initial stop, and then, of course, Rodriguez sent it back for a determination as to whether there was reasonable suspicion. Was it an extension at the time they asked ID and travel? Was that itself an extension, or was the extension after that? That is, you know, you stop, and then they asked the ID, and then they asked a bit of travel. Now, is that already an extension so that you're questioning that, or is that just a normal part of what you do in a situation without that being an extension? And the moment he answered as to the travel, then you get the question of whether the answers were sufficient to create suspicion. I draw the line at the moment he begins to ask the travel-related questions, and that's based on Rodriguez. Again, Rodriguez says that typical questions for a stop are going to involve license, registration, proof of insurance, and then running for warrants. And importantly, the officer in Rodriguez did ask travel-related questions. Where are you going? Where are you coming from? But the court did not include such questions in their list of what is typical and proper for a traffic-related stop. The court didn't go so far as to say that such questions were improper, did it? No, but it strongly suggests that, because we have facts where those questions are asked, and then they don't suggest that those questions are proper. Well, it didn't purport to give a comprehensive list. It just cited those as typical of questions asked, properly asked at a stop, right? Yes, it cited those as typical, but the officer here acknowledged that his travel-related questions were because he was looking for other criminal activity. So the record That's a matter of his intent, and the question is whether we do an objective or a subjective. That is, when there is a traffic stop of that sort that is proper, is it okay to ask ID? Yes. Is it also okay to ask where are you going? Only if there's reasonable suspicion of other activity, and if it's not extending the stop. Now, if something else is going on at the same time, then the officer can ask these other questions. So if it's not extending the stop, the officer can ask these other questions. But if it's extending the stop, questions about where you're going, where you're coming from, what's the full name of the person you're going to be staying with, that is completely unrelated to a traffic stop for crossing a fog line. There is no excuse for asking that unless there is reasonable suspicion. Wasn't there some, there were some facts that gave rise to suspicion? I mean, the cab driver indicated that he didn't know where he was going. There was a concern about an abrupt stop, which had meaning to the police officer. The defendant, Mr. Carter, was in the back of the seat. He has his head down, his hands between his legs. He had some suspicion at that point for further inquiry, correct? If we take out the travel related questions, and we just look at what he knew and what he'd seen up to that point, we have a collection of innocuous facts, and let's take a look at those. We have the abrupt stop that your honor mentioned. The officer said that, well, during an abrupt stop, maybe some people are trying to conceal a weapon. That doesn't make sense. It would be the opposite. If somebody was trying to conceal something, they would extend the length of the time that it takes to come to a stop. That would give them more time to conceal. So the officer's rationale for the abrupt stop doesn't make sense. And then we have the red bull. The officer mentioned that there was an energy drink that was present. Well, of course, this is a taxi driver. He's driving for a living. He's going to have something that would help him stay awake while driving. He also mentioned the ringing cell phone. But this was a cell phone that was in the front next to one of those cup containers next to the driver. Did the district court focus on any of those, or just say the questions that were asked immediately were normal questions? Is that, I mean, I don't think- It was the second, your honor. Yeah. I don't think the district court focused in deciding that this was OK on any of the things which you said were probably improper, was it? That's correct, your honor. The district court concluded that it was proper to ask the travel-related questions, and that's where I think the district court analytically made its mistake. The district court should have focused just on what the officer knew up to the point before the travel-related questions began. So it's your position that it's always improper to ask travel-related questions for a traffic stop unless the officer observes something that gives him reasonable suspicion that something else is afoot? Yes, and unless it's not measurably extending the traffic stop. So if something else is going on at the same time that's legitimately related to the traffic stop, then the officer can- But when you're asking for somebody's ID, and they have to go and get the license, their papers, and so on. How does it extend things if at the same time you say, and by the way, where are you going? Well, conceivably, that would not, your honor. However, in this case, the officer's testimony is clear. He first asked for a driver's license and ID, and then he started asking, where are you going? Where are you coming from? And he- After he got those? After he got those, that's correct. He got that, and then he started asking very detailed and intrusive questions about, what's the name and address of the person that you were living with in Albany? That comes, everything is a step after the next. That is, if the initial travel-related questions were okay, but the answers to them suggested something else, then we're down the line. Where are you going? I don't know. That suggests you ask something else. So that the question really is whether the first one was in an extension. And it was an extension under the record. There was nothing else going on that did extend it. Didn't he have the ability to check the license plate to go back and run it in the car? He gave it to the other officers. That's something that he could legitimately do and would extend the stop, correct? Yes, Your Honor. It's proper to go check the license to run the registration, and he gave those documents to the other officer to do that, correct? That's correct. But in the sequence, first he gets the license and registration. Then he starts asking travel-related questions. And then he asked the driver, Newsom, to step out. It's only at that point that Officer Burnham shows up, at the moment that Newsom has stepped out. Is it an extension if you are asking questions during the time that you would need to check out the license and IDs anyway? I would concede it would not be. However, he extended from that point when he started asking the travel-related questions, certainly up to the point that Officer Burnham arrived. And then he gave Officer Burnham the ID to have Officer Burnham. But is it an extension to wait until the other officer come and have that person check things out? It was an extension under these circumstances. He wasn't waiting for another officer. Officer Burnham arrived on his own. He had not. He just happened to be driving along. Your argument is that what he should have done was, with those, immediately start checking. Yes. Send them off to be checked. Yes, Your Honor. While that was happening, could he have asked other questions? Courts have held, yes. Courts have held that as long as something else is going on that's part of the traffic stop, then it's not measurably extending the stop. Is it an extension if it takes no more time than had he done that, than that would have required? Well, Your Honor, I think we're limited to the facts that we have in the case, which is it was extended because he was asking travel. I hear your argument. I'm not disagreeing with it. I'm just asking whether there are any cases or anything that suggests that if it would have taken three minutes to do that, and instead of doing that, he took those three minutes to ask something else, that is an extension. We don't know how long it took to run. I don't know either. Thank you. All right. Thank you very much. You've reserved two minutes for rebuttal. Mr. Miller. Good morning, Your Honors. My name is Kevin Doyle from the U.S. Attorney's Office in Burlington, Vermont. After Officer Murawski conducted a valid traffic stop that night in the Manchester, Vermont area, the developing facts provided abundant reasonable suspicion for Officer Murawski to ask those follow-up questions, ultimately resulting in really what was a very efficient investigation. This is, as Your Honors know, 21 minutes from the time of the stop to the writing. Opposing counsel is focusing on a very narrow point, on whether between the time he got the license and later, whether he could ask these travel-related questions when those, opposing counsel says, have nothing to do with the traffic stop and extended the traffic stop even minimally. So I have no disagreement with the fact that this is efficient, with the fact that once he started giving answers, the answers were suspicious enough so that he could ask the next question, and the next question led to the next one. All that is fine with me. I just want to focus on this narrow point that you're opposing counsel. Narrow, but he says open. So, Your Honor, ultimately the traffic citation in this case was written for crossing the fog line, but if you look back to the earliest development of the facts here, at the time that Officer Murawski is sitting in the median, he's watching this car approach. He's seeing this frequent lane change. That's the first thing that kind of piques his interest. The car passes him. It has the handmade sign on the side. It does this lane change from the left to the right to the left as it's passing him. He pulls out. It changes yet again, and now with this lane change, it goes a substantial distance over the fog line. The reason why I give that background, Your Honor, is because while it is a fog line violation that's ultimately written up, the officer has a reasonable suspicion that he could be dealing with impairment, and I think that that leads directly and in a very relevant way to his questioning the driver, as well as Mr. Carter, about where they're coming from and where they're going to. This could be someone who's fatigued and is crossing over the fog line. This also could be someone who's impaired due to alcohol or drug use. Where they're coming from and where they're going to, Your Honor, in the government's view, would be highly relevant to that question. So you're saying that this, whatever it may be in another case, in this case with travel-related questions of both parties, of a passenger as well, was related to the stop? That's correct, Your Honor, and as I think the court— Did the district court so find? The court did comment generally, as I recall, Your Honor, on the types of questions that Officer Murawski asked, and the district court did not take issue with those general questions, and courts have found that those kinds of contextual questions, Your Honor, are entirely appropriate in a traffic stop. Right, but did the court find that these were contextual questions? I can't recall as I stand here, Your Honor, exactly— I'm not focused on that myself, so I just wonder. But if impairment was the concern, why were the questions to the passenger appropriate? Well, I think this is kind of that cascading development of facts, Your Honor. You know, when Officer Murawski first asks the questions of the driver, and he's getting some questions that don't sit well with him and are generating some concern, then he turns to the passenger, because it's interesting to Officer Murawski that the driver doesn't know where he's going, so then he turns to the passenger to say, well, where are you going? I think that is the segue, Your Honor, that leads to the officer then asking questions of the man in the back seat. If the driver doesn't know where he's going, it's perfectly sensible, you say, to ask the passenger who ought to tell the driver where he's going. That's correct, Your Honor. That's correct. And the facts, really, from the moment—I certainly don't want to belabor the facts. I know the Court is aware of the facts of the case, but this is not the nervousness that one might expect when a police officer pulls over another car. I know that point has been raised by the appellant in his brief. This is really uncontrollable shaking by both the driver and the passenger in the back. This immediately sends Officer Murawski reasonably on the line of questioning that he continues to pursue with them, and with each following question, the answers get more and more suspect. So this is— Now you're making a different argument, and that is, even if it were unrelated to the traffic stop, the moment there was a traffic stop and questions like ID and so on, the shaking was enough to ask further questions? I think it was, Your Honor. Yes. And did the district court speak specifically to that? It did comment on the—I believe in its factual recitation, Your Honor, it did talk about the fact that the testimony was that both men were shaking when they handed over their ID, and then Judge Crawford, applying the totality of the circumstances analysis that's required here, and using the objective standard, as the Court has commented on, found that all of this together resulted in reasonable suspicion to continue that line of questioning and ultimately recovering the drugs. And so for that reason, Your Honor, this is a Rodriguez—well, I want to say it's not a Rodriguez issue ultimately, because we have the reasonable suspicion here that is lacking in the Rodriguez decision. The district court found that questioning relating to driver's travel plans ordinarily fall within the scope of a traffic stop. Is that correct statement of the law? Yes, Your Honor. The cases that I have read and that I believe the government has cited in its brief talk generally about the idea that during a traffic stop, police officers ask these kind of contextual questions of the motorists that they pull over. That's appropriate, even if it hadn't been a question of wondering whether the driver was on drugs or alcohol. Is it your position that as part of a traffic stop, it's permissible to ask those kinds of questions? Yes, Your Honor. Yes. See, one of the questions I also want to know is how much this has been decided and how much this is a new issue. And the question, as put by opposing counsel, would raise a new question about whether where you're going and so on are, or at least the first ones, are appropriate extensions in themselves. If instead the questions were proper for reasons like the shaking or because of the spinning, the moving from lane to lane and therefore impairment, then there are cases that speak to this and we can deal with that directly. Yes, Your Honor. If the court has no further questions for me, we rest on our submission. Thank you. Very good. Mr. Colgan, you have two minutes. Thank you, Your Honor. The government argues that the stop initially was investigating whether there was impairment. But in fact, there was no testimony that the travel-related questions were there to determine if there was intoxication. And in particular, I'd like to draw the court's attention to page 173 in the joint appendix where the court addresses this issue and says, regarding whether there was reasonable suspicion of an impaired driver, he says, I think that was ruled out almost immediately or doesn't seem to have been a feature. So from the very beginning of the interaction between the officer and the driver, the officer clearly did not think that the driver was impaired. So that was ruled out immediately. What was, in your view, the officer authorized to ask when he observed the, at 930 at night, an out-of-state vehicle with a homemade sign that maybe was a gypsy cab, changing lanes repeatedly and then crossing two feet over on the fog lane? Was he authorized to ask simply for license, registration, and then to give a citation and to do nothing more? That's correct, Your Honor. And regarding the lane change, the officer acknowledged that this car had a left entrance onto Route 7. So, of course, it was starting out in the left lane. As it passed the officer, it shifted properly over to the right lane. There was nothing suspicious about that. Can you ask the driver of a car that is like this, out-of-state, odd license and so on, and is behaving strangely, where are you going? Can you ask the driver, not the passenger? I mean, the passenger might be a different thing, but can you ask the driver? Unless there's reasonable suspicion of other activity? No, that's going beyond... Really, in a way, the question, because if you can ask the driver, and the driver answers in a way that suggests that the driver doesn't know where he's going, then I think it's probably perfectly sensible to be able to ask the passenger. In a taxi. So, your previous argument was focusing on questions to the passenger, but for me, it's kind of interesting to know whether one can ask the driver of an out-of-state cab, et cetera, et cetera, et cetera, beyond the ID and so on, where are you going? And that's completely unrelated to the purposes of the traffic stop, so the answer is no. And in answer to your question about whether this is a new issue, it is. In light of Rodriguez, this is a new issue, because Rodriguez certainly suggests that you can't go beyond the questions of license and registration and proof of insurance. Thank you very much. I think we have the arguments. Thank you, Your Honor. We'll reserve decision. We'll argue both sides. Thank you.